R. is submitted on the brief, so we'll hear argument in Russell v. GEICO. May it please the Court, my name is Noam Glick, and I am representing the appellant Marisha Russell. I'd like to reserve four minutes for rebuttal, please. All right, you can watch your time. I'll try to help you as well. Thank you, Your Honor. Your Honor, this is, as Your Honors know, this is a wage-hour class action. The fundamental issue here is whether the defendant, GEICO, properly accounted for annual bonuses when calculating the regular rate of pay for purposes of paying overtime to its employees. And so there's two bonuses at issue here, a cash bonus and a bonus that is a contribution to an employee trust account. And so this is a technical case, but one that we think is quite straightforward when you dig into it just a little bit. I'd like to start, if I could, with the cash bonus. And I want to return to a theme here, which is a theme that GEICO has acknowledged and the district court acknowledged, which is that there's two methods to calculate a bonus. We call it the traditional method, where the bonus is paid out in cash and then reapportioned back over the hours worked to get a new regular rate of pay, an increased regular rate of pay, which then becomes the proper regular rate of pay for purposes of calculating the one-and-a-half times of overtime owed. That is the we call it the traditional method. The percentage method is an alternative to the traditional method. Well, we understand both methods. The issue is how do you win under either of them? So we win because the two methods are supposed to yield identical results, and they don't. The fundamental premise behind the percentage method is that by calculating overtime, by calculating the bonus as a percentage of straight and overtime hours worked, if you do it, the math works out so that the overtime payment is exactly as it would be had the bonus been reapportioned under the traditional method. That is this mathematical, this is the theme, the mathematical equivalency. It has to be mathematically equivalent. I'm missing something. Your theory, your approach seems to me to result, no matter how you slice it, in double counting the stub two-month period. In other words, getting overtime based on overtime for the stub 12- to 14-month period. So I think by stub you're referring to the calendar. I'm referring to the calendar year ends December 31st. You don't get paid until, no one gets paid until for two months. That's the stub period. Understood. Well, there's no, under the stub period, the two months, the longevity period, as it may be called. Okay. That two-month period, there's absolutely no double counting because employees under GEICO's program do not get paid any overtime adjustment at all over those two months. The percentage method is based on the calendar year. It does not extend out to those two stub years, those two longevity, sorry, two stub months, those two longevity months. That's where the employees are being shortchanged, Your Honor. What I'm having trouble understanding on your argument, maybe you can help me, is if you look at the regulation, 778.503, it gives you a formula in which you can increase by the percentage. And then it talks about the arithmetic fact. Why doesn't the method that GEICO uses satisfy that regulation? It would if GEICO didn't force employees to remain employed over the two-month period following the end of the calendar year because that method works only if, and this is the mathematical equivalency, you only have mathematical equivalency if you calculate the percentage based on the actual earnings period, not based on some arbitrary earnings period, but the actual earnings period. GEICO sets the earning period as the calendar year. Now, GEICO could say there's no bonus, right? Correct. Okay. So GEICO says, but if you want a bonus, then you have to remain in our employee for this period. Subsequent to the percentage bonus period, right? Right. And that's what GEICO does. But we're going to pay you for, assuming you remain, we are going to pay you for that past calendar year the full percentage of the bonus you're owed. For the past calendar year, but we're not going to pay you. So you're saying it's an illegal condition? This is what I'm having trouble understanding. So remember that the two methods are supposed to yield mathematically identical outcomes, right? So let's imagine we're doing this under the traditional reapportionment method, okay? And suppose GEICO paid a bonus of $10,000, and it paid it only if you stayed employed until February following that first calendar year. GEICO would have to concede that the bonus period under those facts would be January of year one to February payout of year two. Why is that the bonus period? We can look at 29 CFR 778.211C, and I'll read from that provision. Bonuses which are announced to induce employees to remain with the firm are regarded as part of the regular rate of pay. Bonuses contingent upon the employees continuing in employment until the time the payment is to be made and the like are in this category. They must be included in the regular rate of pay. That's 211. So 211 makes clear that that stub period, as you called it, must be part of the regular rate of pay. So if you're doing the calculation under the traditional method, you would have to extend the period in question through to the February payout. So what GEICO does instead is they say, well, no, we can do this as a percentage, but they don't do it as a percentage of the 14-month period. They do it as a percentage of a 12-month period, and the employee is short of the overtime over those subsequent two months. Do you want to reserve your remaining time? I will. Thank you. Good morning. May it please the Court. I'm Aaron Buckley. I represent the APALE, in this case, Government Employees Insurance Company. So what we're talking about here in terms of the stub months of January and February following the plan year is simply a condition upon receipt of the bonus. In two opinion letters, the November 8, 1985 opinion letter, the Department of Labor opined that a percentage bonus, in fact, can be a longevity bonus, and then again in 2005 the department issued an opinion letter specifically approving the type of bonus here, where you have a certain plan year and then the bonus is actually paid in the following year. And there's a reason why these conditional or longevity bonuses are allowed, and that is simple. The conditions do not change the math. The plan year, which is the calendar year, that is the period for which the bonus is paid, and it is undisputed here that when the appellant, Ms. Russell, received her bonus in February of 2013 for the 2012 plan year, she received precisely 10 percent of her total earnings in a cash bonus and another 10 percent of her total earnings in a trust contribution. So the condition does not change the math, and the math is clear. Under a percentage bonus like this, the recipients are receiving all their overtime pay as a matter of arithmetic fact. This same principle applies both to the cash bonus and to the trust contribution because they are both calculated in precisely the same way as a percentage of total earnings, which includes all the employee's regular pay, overtime pay, shift deferential pay, and any commissions or bonuses other than the profit-sharing bonus itself. Is there any condition at which point it would dissipate the bonus? In other words, you're entitled to your bonus for the year, but you must remain for nine additional months. Would that be permitted? Well, I don't see why it wouldn't be permitted, Your Honor, under both the guidance of the Department of Labor and the Fifth Circuit Brock case, which is cited in the briefs. The principle is the same because the period for which the bonus is paid is, the math works out, the same as it would be if you were doing the regular rate method. So, you know, the condition itself doesn't matter. Now we can question whether that would be a wise thing, making people wait, you know, nine months. You know, to the extent companies are- Well, you're not really entitled to your bonus. You don't get your bonus if you don't stay nine months or even, let's say, another year. It's like a golden handcuff for the employee. Well, it would be, Your Honor, and one can question, again, whether that would be wise because it might not have the, you know, the effect that you're trying to create, which is to encourage employees to stay on. Someone might be more willing to stay on for a month or two than they might be for nine months. So that might be unwise if an employer were requiring its employees to wait nine months. But it would not be unlawful because, again, the math would work out. And there doesn't seem to be any, I think, legitimate argument in this case that the math does not, in fact, work out when a percentage bonus is paid as either a cash bonus or, in this case, both a cash bonus and a trust contribution. There's an additional reason, of course, why the trust contribution is valid, and that is that it's a contribution to a retirement plan. So under 29 United States Code Section 207 Subdivision E-4, that itself would be excluded from the regular rate of pay even if it were not a percentage bonus. So there are two independent reasons why the trust contributions are excludable. So I think that covers it, Your Honor, but I'm willing to answer any questions the Court may have. Thank you. Thank you, Your Honor. Thank you. I'd like to return to respond to a point that counsel just made, which is the hypothetical that you presented where the employee has to stay an extra nine months. Counsel said that that might not have the effect that you're trying to create, which is to get the employee to stay on, and that is precisely why the earnings period needs to include this longevity portion because the employer gets something out of the employee by requiring them to stay that extra period. In GEICO's case, we haven't had an opportunity to discover yet. We're on a motion to dismiss, but we believe that those first couple months in the calendar year that GEICO requires the employee to stay in order to get the bonus, those couple months are very important to GEICO because there's a lot of activity in the insurance industry around the renewal time at the beginning of the year. But the equally plausible explanation is they've got to close the year in books. They've got to see, you know, what the year looked like, so they know what the multiplier is when they calculate the bonus. And if that were their motivation, if that's what they needed, there's a simple way to do it that wouldn't require us to be here today, which is pay the bonus in February, but don't require the employee to remain employed through February in order to receive it. They can do the math that way and true up. So your Honor's hypothetical I think was dead on. It presents the fundamental problem with GEICO's plan. We provided a hypothetical in our papers of the bellhop in Alaska who works one month, gets a bonus paid on January, 100% bonus on January's earnings, but must stay employed the rest of the year in order to receive that bonus. No doubt the employer is getting valuable consideration and incentivizing the employee to work hard throughout the rest of that year. And the whole fundamental purpose of the regular rate laws is to ensure that when you're asking employees to work hard on your behalf, to stay longer than you might otherwise stay, that that extra work that you derive from that employee needs to be compensated. The overtime rate needs to be adjusted. And so that hypothetical I think rings true. It exposes the fundamental problem with their argument. If Your Honors would like, I could address the argument on the trust payment that it qualifies under 29 U.S.C. 207E4. I'll just briefly, this is in our papers too, but I'll briefly note that for the trust to be excludable, it has to either be, it has to, there has to be a definite formula or a formula for determining the amount contributed by the employer into the trust. That's right out of the CFR 215A. You don't want to bring up new matters on rebuttal though, do you? I just was responding to counsel's point. All right. So I would just direct the court's attention to 29 CFR 215A for why that argument is defective. It's also in our papers. With that, I'm happy to address any other questions that the court may have. Appears not. Thank you. Thank you, Your Honors. The case just argued of Russell v. Geico is submitted. Thank both counsel for coming up from San Diego.
judges: Parker, Farris, McKeown